IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:22-CV-344-FL

| | |
|---|---|
| BENJAMIN C. LOCKE ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | ORDER |
| NORTH CAROLINA STATE ) | |
| UNIVERSITY; and ) | |
| ROBERT M MURPHY JR, in his official ) | |
| and individual capacities; ) | |
| ) | |
| Defendants. ) | |

This matter comes before the court on defendants' separate motions to dismiss pursuant to Rules 12(b)(1) and 12(b)(6) (DE 26 and 31). The issues raised are ripe for ruling. For the following reasons, the motion by defendant North Carolina State University ("NCSU") is granted and the motion by defendant Robert M. Murphy ("Murphy") is denied.

**STATEMENT OF THE CASE**

Plaintiff commenced this action[1] by complaint filed August 30, 2022, bringing claims for violations of Title IX of the Education Amendments of 1972, 20 U.S.C. §§ 1681, et seq., negligent training and supervision, battery, and invasion of privacy against defendants NCSU and Murphy, as well as former defendants William Woodson ("Woodson"), Ann Yow ("Yow"), and Lester Clinkscales ("Clinkscales"). On January 13, 2023, plaintiff withdrew his claims against former defendants Woodson, Yow, and Clinkscales.

---

[1] Related cases <u>Doe v. NCSU</u>, 5:23-cv-044, and <u>Doe II v. NCSU</u>, 5:23-cv-216, are also pending before this court.

1

On November 23 and 29, 2022, respectively, defendants NCSU and Murphy filed motions to dismiss; however, defendant Murphy did not file a memorandum of law in support of his motion. Plaintiff responded in opposition to both motions. Defendant NCSU replied, and the time for defendant Murphy to reply expired with no reply having been filed. In this posture, the issues raised are ripe for ruling.

## STATEMENT OF FACTS

The relevant facts are alleged in the complaint as follows. Plaintiff joined the NCSU soccer team in January 2015, when he was seventeen years old. (Compl. ¶¶ 27-29). Shortly after arriving on campus, plaintiff "experienced recurrent anterior shin pain and reported his condition to Murphy," (id. ¶ 35), the university's director of sports medicine and the designated team trainer for men's soccer. (Id. ¶ 33, 37). Plaintiff "was seen by a team physician and diagnosed with bilateral compartment syndrome," for which he underwent surgery. (Id. 38-39). The day following surgery, defendant Murphy told plaintiff "that he was concerned about possible infection" if plaintiff's incisions "became wet while bathing." (Id. ¶ 41). Defendant Murphy drove plaintiff to an athletic facility on campus in Murphy's personal vehicle, where plaintiff's parents met them. (Id. ¶¶ 48-49). Murphy instructed plaintiff's parents to return home, "physically assisted" plaintiff in undressing, "followed [plaintiff] into the men's communal shower," and "watched [plaintiff] shower." (Id. ¶¶ 51-54).

"Beginning in August 2015," plaintiff experienced groin pain, which he reported to Murphy. Under the guise of treating plaintiff's pain, Murphy performed sports massages and deep tissue massages on plaintiff's "groin, adductor muscles, hamstrings, and hip flexors" and applied athletic wraps to his groin, torso, and thighs. (Id. ¶ 69). Murphy allegedly conducted massages and wrapping procedures in his private office with the blinds closed, directed plaintiff to undress

2

fully, made offensive comments, and handled plaintiff's genitals without consent or medical necessity. (Id. ¶¶ 69-73). Some of these massages caused extraordinary pain and left plaintiff with bruises. (Id. ¶ 69(f)). On one occasion, defendant Murphy instructed plaintiff to undergo an unnecessary prostate exam at an on-campus athletic facility and watched the doctor perform that exam. (Id. ¶¶ 58-63). Plaintiff was examined by a team doctor and diagnosed with a sports hernia in October 17, 2016, for which he underwent surgery, (id. ¶ 66), nevertheless, defendant Murphy continued to abuse plaintiff until 2017, when plaintiff transferred schools. (Id. ¶¶ 69, 90).

In 2021, according to the complaint, plaintiff disclosed the abuse to a therapist. (Id. ¶ 78). The therapist allegedly told plaintiff that "the incident when he was 17 years old was sexual abuse of a minor" and the therapist was required to report it to law enforcement unless plaintiff was willing to do so himself. (Id.). Plaintiff did so, and defendant NCSU launched a Title IX investigation. (Id. ¶ 79-81). The investigation found, in relevant part, that "head soccer coach Findley told . . . [senior associate athletic director] Clinkscales, before Clinkscales left NCSU on or about February 26, 2016, that Murphy was engaging in conduct with male student-athletes that he believed was consistent with 'grooming' behavior." (Id. ¶ 83(a)). The investigation also found that Murphy's "duties as director of sports medicine were adjusted to be more 'administrative'" and he "was removed as the designated athletic trainer for the men's soccer team" on August 1, 2017. (Id. ¶¶ 83(a)-(b)).

**COURT'S DISCUSSION**

A.  Standard of Review

A Rule 12(b)(1) motion challenges the court's subject matter jurisdiction, and the plaintiff bears the burden of showing that federal jurisdiction is appropriate when challenged by the defendant. See McNutt v. Gen. Motors Acceptance Corp., 298 U.S. 178, 189 (1936); Adams v.

3

Bain, 697 F.2d 1213, 1219 (4th Cir. 1982).[2] Such a motion may either 1) assert the complaint fails to state facts upon which subject matter jurisdiction may be based, or 2) attack the existence of subject matter jurisdiction in fact, apart from the complaint. Bain, 697 F.2d at 1219. Where a defendant raises a "facial challenge[] to standing that do[es] not dispute the jurisdictional facts alleged in the complaint," the court accepts " the facts of the complaint as true as [the court] would in context of a Rule 12(b)(6) challenge." Kenny v. Wilson, 885 F.3d 280, 287 (4th Cir. 2018).

"To survive a motion to dismiss" under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "Factual allegations must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555. In evaluating whether a claim is stated, "[the] court accepts all well-pled facts as true and construes these facts in the light most favorable to the plaintiff," but does not consider "legal conclusions, elements of a cause of action, . . . bare assertions devoid of further factual enhancement[,] . . . unwarranted inferences, unreasonable conclusions, or arguments." Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 255 (4th Cir. 2009).

B. Analysis

1. Claims against Defendant Murphy

A defendant who moves to dismiss must show that the claims do not meet the "Federal Rules' requirements." Francis v. Giacomelli, 588 F.3d 186, 193 (4th Cir. 2009). See also United States v. Cox, 743 Fed. Appx. 509, 513 (4th Cir. 2018) (holding a party's dismissal for failure to state a claim argument waived when the party failed to file a supporting memorandum).

---

[2] Internal citations and quotation marks are omitted from all citations unless otherwise specified.

Defendant Murphy does not include any legal arguments in his motion to dismiss; instead, he references a supporting memorandum that has not been filed. (D.E. 31). In the absence of a legal argument, Defendant Murphy has not caried his burden to show that he is entitled to dismissal. Accordingly, his motion is denied.

2. Intentional Tort Claims against Defendant NCSU

Defendant NCSU argues, and plaintiff concedes, that sovereign immunity bars intentional tort claims against the state. (See DE 37 at 25) ("NCSU . . . [is] entitled to invoke sovereign immunity."). The court agrees that it lacks subject matter jurisdiction to decide these claims.

"The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State." U.S. Const. amend. XI. "The Eleventh Amendment bars suits against non-consenting states by private individuals in federal court." Bd. Of Trustees of the Univ. of Ala. v. Garrett, 531 U.S. 356, 363 (2001); Idaho v. Coeur d'Alene Tribe of Idaho, 521 U.S. 261, 267 (1997). Congress may in limited instances abrogate non-consenting states' sovereign immunity where it has "unequivocally expresse[d] its intent to abrogate the immunity." Seminole Tribe of Fla. v. Fla., 517 U.S. 44, 55 (1996). The most significant of these is Congress's ability to abrogate the sovereign immunity of non-consenting states through legislation "tailored to 'remedy or prevent' conduct infringing the Fourteenth Amendment's substantive prohibitions." Allen v. Cooper, 140 S. Ct. 994, 1003–04 (2020).

Here, plaintiff concedes that neither the Congress nor North Carolina has waived the state's sovereign immunity in cases of battery or invasion of privacy. Accordingly, these claims are dismissed for lack of subject matter jurisdiction.

5

3. Negligent Training and Supervision Claim against Defendant NCSU

Defendant NCSU argues that plaintiff's negligence claim likewise is barred by sovereign immunity. "As to claims sounding in negligence, North Carolina has vested exclusive jurisdiction in the North Carolina Industrial Commission." Stewart v. North Carolina, 393 F.3d 484, 490 n.3 (4th Cir. 2005); see N.C. GEN. STAT. § 143–291(a) ("The North Carolina Industrial Commission is hereby constituted a court for the purpose of hearing and passing upon tort claims against . . . departments, institutions and agencies of the State").

Plaintiff asks the court to hold his negligence claim in abeyance until he "proceed[s] against NCSU and Murphy before the" North Carolina Industrial Commission. (DE 38 at 24). This court, however, lacks jurisdiction to decide this claim, see Stewart, 393 F.3d at 490 n.3, and cannot "obtain jurisdiction by simply not acting on the motion to dismiss" until the case achieves the necessary procedural posture. Plyer v. United States, 900 F.2d 41, 42 (4th Cir. 1990). Accordingly, plaintiff's negligence claim against NCSU is dismissed for lack of subject matter jurisdiction.

4. Title IX Claim against Defendant NCSU

Defendant NCSU argues that plaintiff's Title IX claim fails for failure to allege facts that, if true, would support an inference that it received actual notice of the abuse. The court agrees. Where lack of notice is dispositive, the court does not address NCSU's argument that the claim is barred by the statute of limitations.

Title IX, which imposes liability on certain educational institutions in cases involving employees' sexual harassment of students, is "enforceable through an implied private right of action." Gebser v. Lago Vista Independent School Dist., 524 U.S. 274, 281 (1998). Under Fourth Circuit precedent,

6

> to establish a Title IX claim on the basis of sexual harassment, a plaintiff must show that 1) [he] was a student at an educational institution receiving federal funds, 2) [he] was subjected to harassment based on [his] sex, (3) the harassment was sufficiently severe or pervasive to create a hostile (or abusive) environment in an educational program or activity, and (4) there is a basis for imputing liability to the institution.

Jennings v. University of North Carolina, 482 F.3d 686, 695 (4th Cir. 2007) (en banc). Only the fourth element, whether there is a basis for holding defendant NCSU liable, is at issue in this case.

An educational institution may be liable for sexual harassment of its students by an employee only if "an official of the school . . . who at a minimum has authority to institute corrective measures on the [school's] behalf has actual notice of, and is deliberately indifferent to, the [employee's] misconduct." Gebser, 524 U.S. at 277. Actual notice is established for Title IX purposes when "a school official with authority to address complaints of sexual harassment and to institute corrective measures receives a report that can objectively be construed as alleging sexual harassment." Doe v. Fairfax County School Board, 1 F.4th 257, 262 (4th Cir. 2021). The institution must be "aware of an allegation that [an employee is] currently abusing a student[,] although the school [does] not need to know the identity of the student allegedly being abused." Id. at 265 (emphasis removed). Mere "allegations supporting a general, substantial risk of – or the potential for – ongoing or future misconduct by" an employee does not constitute sufficient notice for Title IX purposes. Id. (emphasis removed).

The United States Court of Appeals for the Fourth Circuit has found actual notice or lack thereof in several Title IX cases. For example, it found that a university had actual notice of sexual harassment by a soccer coach when the victim of harassment met with a university's "highest ranking lawyer," offering "vivid details" of the harassment and describing "intense feelings of discomfort and humiliation." Jennings, 482 F.3d at 700. Actual notice likewise has been found when school officials received a written and oral report from a student that she had been

7

inappropriately touched on a school trip without her consent, confirmation from the alleged harasser, and multiple reports from students and parents, but nevertheless concluded that "the evidence that they had didn't show that they could call [the incident] a sexual assault." See Fairfax County School Board, 1 F.4th at 262; see also Doe by next friend Pullen-Smith v. Qually, No. 5:20-cv-523, 2021 WL 2546456, at *7 (E.D.N.C. 2021) (finding actual knowledge in a case of alleged sexual harassment by a student where the plaintiff notified her principal, who questioned the alleged harasser). Conversely, no notice was found in a case in which a former student informed a school principal that an alleged harasser was "a pedophile," a librarian reported inappropriate physical contact between that teacher and a student to the principal, and a teacher reported a tip from a neighbor that the alleged harasser "abused children." Baynard v. Malone, 268 F.3d 228, 234 (4th Cir. 2001).

The complaint does not allege facts permitting an inference that defendant NCSU had actual notice of alleged abuse by defendant Murphy. According to the complaint, "head soccer coach Kelly Findley told" senior associate athletic director Clinkscales "that Murphy was engaging in conduct with male student-athletes that he believed was consistent with 'grooming' behavior." (Compl. ¶ 83(a)). The complaint does not allege, however, that Findley reported any "single incident of [sexual] harassment." Fairfax County School Board, 1 F. 4th at 273; see also Doe v. Galster, 768 F.3d 611, 617 (7th Cir. 2014) ("The standard . . . is not satisfied by knowledge that something might be happening . . . [; s]chool administrators have actual knowledge only of the incidents that they witness or that have been reported to them."); Papelino v. Albany College of Pharmacy of Union University, 633 F.3d 81, 90 (2d Cir. 2011) (finding that a student's report of inappropriate touching by a professor and "several other incidents that took place" could constitute actual notice). Controlling precedent has found allegations sufficient to constitute notice only

8

when those allegations describe a specific incident or incidents of sexual harassment. See e.g., Davis ex rel. LaShonda D. v. Monroe County Board of Education 526 U.S. 629, 634-35 (1999) (characterizing allegations that one student "attempted to touch [plaintiff's] breasts and genital area and made vulgar statements such as 'I want to get in bed with you' and 'I want to feel your boobs'" as "reported harassment."); id. (in which school administrators received reports that one student had sexually assaulted another by touching her "'down her pants and up her shirt' without her consent, 'forc[ing] her hand on his penis,' and 'sexually assaulted' her"); Jennings, 482 F.3d at 700 (in which a school administrator "was given vivid details of [a coach's] sexual comments about his players" and a victim reported "that the situation was causing her intense feelings of discomfort and humiliation"). An allegation of "conduct with male student-athletes . . . consistent with 'grooming' behavior," (compl. ¶ 83(a)), without more, therefore, is insufficient to provide notice of "an incident" of sexual harassment. Fairfax County School Board, 1 F. 4th at 267.

Plaintiff suggests that Murphy's reassignment to an administrative role in August 2017 gives rise to an inference of actual notice. However, such reassignment is "merely consistent with," and does not "plausibly suggest[]," a violation of Title IX. Twombly, 550 U.S. at 557. It does not, as plaintiff argues, "indicate[] that [NCSU] had sufficient notice to find action necessary." (DE 36 at 28). The reassignment occurred over a year after Findley reported to Clinkscales, (see compl. ¶ 66(c)), and in any event, the court has found no precedent to support the proposition that reassignment supports a finding of actual knowledge in the Title IX context.

Plaintiff argues additionally that defendant NCSU "rewarded and enabled conduct they should have known was a threat to students." (DE 36 at 28). Plaintiff contends in addition that "[h]ad [NCSU] not failed to respond to . . . Findley's report about [defendant] Murphy in a timely and meaningful manner, they could have saved [plaintiff] (and others) from a host of severe and

9

lasting negative consequences." (DE 36 at 29).  This may well be the case.  However, this is not the relevant standard for federal civil liability against NCSU under Title IX; instead, the school must have "actual notice of . . . the [employee's] misconduct."  Gebser, 524 U.S. at 277.

Accordingly, plaintiff's claims against NCSU are dismissed.

## CONCLUSION

Based on the foregoing, Defendant NCSU's motion to dismiss, (DE 24), is GRANTED.  Plaintiff's claim against NCSU is DISMISSED for failure to state a claim upon which relief can be granted.  The clerk is instructed to terminate NCSU as a party in this case.  Defendant Murphy's motion to dismiss, (DE 31), is DENIED.  Pursuant to Rule 12(a)(4), defendant Murphy must serve a responsive pleading within 14 days of entry of this order.

SO ORDERED, this the 11th day of September, 2023.

_____
LOUISE W. FLANAGAN
United States District Judge