IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
CASE NO. 5:22-cv-00344-FL

| | |
|---|---|
| BENJAMIN LOCKE,<br><br>    Plaintiff,<br><br>v.<br><br>NORTH CAROLINA STATE UNIVERSITY; DEBORAH A. YOW, in her official capacity; MICHAEL LIPITZ, in his official capacity; LESTER S. CLINKSCALES, in his official capacity; RAYMOND M. HARRISON, in his official capacity; and ROBERT M. MURPHY JR., in his official and individual capacities,<br><br>    Defendant. | **MEMORANDUM IN SUPPORT OF DEFENDANT ROBERT M. MURPHY JR. MOTION TO DISMISS**<br><br>Fed. R. Civ. P. 12(b)(1) (2) & (6) |

Pursuant to Rules 12(b)(1), (2) and (6) of the Federal Rules of Civil Procedure, Defendant Robert M. Murphy, Jr. hereby submits this Memorandum in Support of his Motion to Dismiss.

## INTRODUCTION

Benjamin Locke ("Locke") was a North Carolina State University ("NCSU") student and soccer player from 2015 through 2017. In 2022, Locke first brought claims of sexual abuse by Defendant Robert M. Murphy ("Defendant Murphy" or "Murphy"), five to seven years following the alleged events and after having maintained a friendly relationship with Murphy after leaving NCSU. Locke has now filed this action, asserting claims against not only Murphy but also NCSU, among others. As set forth in detail below, the claims against Murphy should be dismissed.

## NATURE OF THE CASE

In his Complaint, Locke sues Murphy in both his official and individual capacity. Principally, it appears from Plaintiff's Complaint that he has sued Defendant Murphy for the North Carolina state tort of civil battery, but it may have also been Plaintiff's intention to include Defendant Murphy

in his other claims under Title IX and/or to sue Murphy in his official capacity for the state tort battery claim. Locke's Title IX claim should be dismissed for failure to state a claim upon which relief can be granted because Murphy is not subject to a cause of action under this title as an individual nor is he is a position for this claim to be maintained against him in an official capacity. Locke's tort claim against Murphy in an official capacity is also subject to dismissal because sovereign immunity bars this Court from considering that claim against him in that official capacity. Finally, the applicable statutes of limitations would bar his state tort claim as well against Defendant Murphy, either in an individual or official capacity. Because the Complaint does not allege viable claims against Defendant Murphy, this Court should grant his motion to dismiss.

## STATEMENT OF FACTS RELEVANT TO DEFENDANT MURPHY

In January 2015, Benjamin Locke started his freshman year at NCSU. (Complaint ¶ 12.) Locke was recruited and awarded a scholarship to join the university's men's soccer team. (Id. ¶ 27.) Locke was born in 1997. (Id. ¶ 26.) (During the spring of 2015, Locke was under 18-years old; he turned 18 during the summer of 2015. (Original Complaint ¶ 27.) While Locke was enrolled at NCSU, Robert Murphy was the Director of Sports Medicine. (Complaint. ¶ 30.) Locke alleges inappropriate conduct by Murphy, some of which is alleged to have occurred in March 2015, while other conduct is alleged to have occurred from August of 2015 through May 2017, at which time Locke left NCSU. As alleged in the Complaint, such conduct includes Murphy watching Locke take a shower and came within, "one to two feet" of Locke's groin following a surgical procedure when Locke was under 18 and, at a later time when Locke was 18 and over, attempting to remedy Locke's groin pain with various treatments, including massage, (Id. ¶ 56.) as well as inappropriate touching while Murphy was administering treatment to Locke for athletic injuries. (Id. ¶¶ 55, 64, 68, 69, 71, 72, 73, 75.) Locke additionally alleged that Murphy abused him by means of a prostate examination performed by a third-party doctor in December of 2015 (Id. ¶¶ 59-63), by coming within inches of his genitals (Id. ¶ 70), and by making unsolicited comments about Locke's sex life, throwing

condoms at Locke, putting condoms in Locke's backpack, and throwing Locke's compression shorts or underwear at him in the locker room. (Id. ¶ 76).

Plaintiff alleges no behavior by Defendant Murphy prior to the Plaintiff turning 18 years of age that is a battery or sexual in nature, only that Defendant Murphy wrapped both of Locke's calves, helped Plaintiff undress, helped him into the open men's communal shower, and watched him shower from five feet away. (Id. ¶¶ 50, 52, 54). The Complaint does not allege any other conduct by Defendant Murphy during the spring semester of 2015, the period of Plaintiff's alleged minority. The allegations of this nature begin with August of 2015. (Id. ¶ 55).

## ARGUMENT

### I. Standard of Review

To withstand a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, "[a] complaint must contain sufficient factual matter … to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell v. Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007)). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* The Court is not required to accept "[t]hreadbare recitals of the elements of a cause of action supported by mere conclusory statements," but rather, the complaint in consideration must allege facts that create a reasonable inference of defendant's liability. *Id.* The plaintiff must "allege facts sufficient to state all the elements of the [plaintiff's] claim." *Bass v. E.I. DuPont de Nemours & Co.*, 324 F.3d 761, 765 (4th Cir. 2003). When a complaint lacks the well-pleaded factual allegations demanded by *Iqbal* and *Twombly,* the complaint will be dismissed.

Further, the Court must determine whether it has subject matter jurisdiction before it can rule on the merits of the case. *Constantine v. Rectors & Visitors of George Mason Univ.*, 411 F.3d 474, 479–80 (4th Cir. 2005) (citing *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94–95

(1998)). A motion to dismiss pursuant to Rule 12(b)(1) should be granted when the "the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." *Richmond, Fredericksburg & Potomac R.R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991).

## II.   LOCKE'S STATE-LAW CLAIMS ARE BARRED BY THE DOCTRINE OF SOVEREIGN IMMUNITY TO THE EXTENT BROUGHT IN AN OFFICIAL CAPACITY.

Locke asserts a North Carolina state-law claims against Murphy for battery and purports to bring these against Murphy in both his official and individual capacities (Complaint, Count III, Civil Battery). Defendant Murphy will address this claim below in his individual capacity, but regarding this claim in an official capacity, Defendant Murphy no longer holds any official capacity with NCSU. In addition, Sovereign immunity bars this claim brought in this fashion. "Sovereign immunity protects the State and its agencies from suit absent waiver or consent." *See Wood v. N.C. State Univ.,* 147 N.C. App. 336, 338, 556 S.E.2d 38, 40 (2001) It is settled that a "suit against a State employee in that employee's official capacity is a suit against the State and therefore subject to the doctrine of sovereign immunity." *Est. of Long by & through Long v. Fowler*, 2021-NCSC-81, ¶ 13, 378 N.C. 138, 143, 861 S.E.2d 686, 691 (2021); *see also Kentucky v. Graham, 473 U.S. 159, 169 (1985)* (sovereign immunity under the Eleventh Amendment "remains in effect when State officials are sued for damages in their official capacity").

In a partial waiver of sovereign immunity, the General Assembly passed the Tort Claims Act, which grants exclusive jurisdiction to the North Carolina Industrial Commission to hear claims arising from tortious actions or omissions of the State, its agents, or its agencies. *N.C. Gen. Stat. § 143-291(a); Wood, 147 N.C. App. at 342, 556 S.E.2d at 42.* Accordingly, to the extent sovereign immunity has been waived, exclusive jurisdiction lies with the Industrial Commission. Intentional tort claims are not compensable under the Tort Claims Act and, therefore, are barred by sovereign immunity. See *White v. Trew, 366 N.C. 360, 736 S.E.2d 166 (2013)* (stating because plaintiff was

suing for libel, an intentional tort, his claim was barred by sovereign immunity if it was against defendant in his official capacity); *Kawai Am. Corp. v. Univ. of N.C., 152 N.C. App. 163, 567 S.E.2d 215 (2002)* (finding that plaintiff's claim for conversion is barred by doctrine of sovereign immunity). Locke's battery claim is an intentional tort. *See Lynn v. Burnette, 138 N.C. App. 435, 439, 531 S.E.2d 275, 279 (2000)* (battery is an intentional tort); Accordingly, sovereign immunity bars these intentional tort claims. To the extent sovereign immunity has been waived for the remaining tort claims based in negligence, exclusive jurisdiction lies with the Industrial Commission. *N.C. Gen. Stat. § 143-291(a); Wood, 147 N.C. App. at 342, 556 S.E.2d at 42*. Sovereign immunity also extends to state agents being sued in their official capacities. Thus, Locke's negligence-based claims against Murphy in an official capacity is also barred by sovereign immunity. See *Kentucky v. Graham, 473 U.S. 159, 169 (1985)* ("This bar remains in effect when State officials are sued for damages in their official capacity."). Because this Court lacks subject matter jurisdiction over these claims, they must be dismissed.

### III. LOCKE FAILS TO STATE CLAIMS UNDER TITLE IX and 42 U.S.C. § 1983 AS TO DEFENDANT MUPRHY

Our Supreme Court has held that Title IX provides a private cause of action against an educational institution by a student for damages arising out of sexual harassment by an employee of the institution under limited circumstances. *See Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 277, 118 S. Ct. 1989, 1993, 141 L. Ed. 2d 277 (1998). The Court has also concluded that this private cause of action does not extend to provide a claim against individuals. *Fitzgerald v. Barnstable Sch. Comm.*, 555 U.S. 246, 247, 129 S. Ct. 788, 791, 172 L. Ed. 2d 582 (2009)("Title IX reaches institutions and programs that receive federal funds, 20 U.S.C. § 1681(a), …, but it has consistently been interpreted as not authorizing suit against school officials, teachers, and other individuals."). Therefore, Title IX claims asserted against employees of educational institutions, in their individual and/or official capacities, are subject to dismissal under Federal

Rule of Civil Procedure, Rule 12(b)(6). *E.g. Doe by next friend Pullen-Smith v. Qually*, No. 5:20-CV-523-FL, 2021 WL 2546456, at *11, fn. 3 (E.D.N.C. June 21, 2021); *Marshall v. Frederick*, No. 5:19-CV-69-BO, 2019 WL 3822321, at *5 (E.D.N.C. Aug. 14, 2019). The Title IX claim asserted against Defendant Murphy in either his official or unofficial capacity should be dismissed.

In addition to the above, Plaintiff's claims in Count II of his Complaint only makes allegations against NCSU (Complaint ¶¶ 118, 122, 125, 126, 127, 128, 129, 130, 131, 132). To the extent that this claim is purported to be brought against Defendant Murphy it should be dismissed for failure to state a claim upon which relief can be granted as to Defendant Murphy.

## IV. LOCKE'S CLAIMS ARE UNTIMELY.

Plaintiff's claims are time-barred by the three-year statutes of limitations that applies to each claim. This is only modified by the application of North Carolina's SAFE Child Act, which will be discussed more fully below. Locke filed this lawsuit in August 2022, claiming damages from alleged abuse that ended in 2017, when he was over the age of 18.

North Carolina applies a three-year statute of limitations to Locke's state law claims. *See N.C. Gen. Stat. § 1-52(19)* (three-year statute of limitations for battery). The statute of limitations for Locke's federal claims "is determined by reference to the state statute most analogous to Title IX." *McClean v. Duke Univ.*, 376 F. Supp. 3d 585, 597 (M.D.N.C. 2019). And the Fourth Circuit has held that the most analogous state statute is the personal injury statute, which, in North Carolina, provides for a three-year limitation period. *See N.C. Gen. Stat. § 1-52(16); see also Rouse v. Duke Univ.*, 535 F. App'x 289, 294 (4th Cir. 2013) (applying three-year personal injury statute of limitations to Title IX claim).

Plaintiff's Complaint admits in paragraphs 22 and 23 that North Carolina's three-year statute of limitations correctly governs the Federal claims in this action. Plaintiff did not bring this action within three years of the events underlying the action and did not bring the claims

within three years of his having reached the age of 18. Plaintiff relies instead on the applications of the doctrines of the Discovery Rule and the North Carolina SAFE Child Act to argue that his claims are timely. Neither of these are correctly applied in this action, and the Plaintiff's claims herein should be dismissed.

    A.    **DISCOVERY RULE AND FEDERAL LAW CAUSES OF ACTION.**

While state law determines the application of the requisite statute of limitations, federal law determines when a claim accrues. *See Rouse v. Duke Univ.*, 869 F. Supp. 2d 674, 683 (M.D.N.C. 2012). "Under federal law a cause of action accrues when the plaintiff possesses sufficient facts about the harm done to him that reasonable inquiry will reveal his cause of action." *Nassim v. Warden, Md. House of Corr.*, 64 F.3d 951, 955 (4th Cir. 1995). The last act of sexual misconduct alleged by Locke could have occurred no later than May 2017, when Locke left NCSU. (See Complaint ¶¶ 64, 73, 76.) By May 2017, at the latest, Locke had all the facts about the alleged harm done to him such that "reasonable inquiry" would have revealed his cause of action. See *Nassim, 64 F.3d at 955*. The relevant statutes of limitations bars any claims brought after three years, or May 2020. Locke did not bring these claims until August 2022.

Plaintiff relies on Nassim v. Warden for the application of the Discovery Rule in his Complaint.

> "Federal law determines when Locke's federal law claims accrued. Discrimination claims accrue "when the plaintiff possesses sufficient facts about the harm done to him that reasonable inquiry will reveal his cause of action." *Nasim v. Warden, Md. House of Corr.*, 64 F.3d 951, 955 (4th Cir. 1995) (en banc) (citing *United States v. Kubrick*, 444 U.S. 111, 122-24 (1979)). See also *McCarter v. The Univ. of N. Carolina At Chapel Hill* (M.D.N.C. 2021)." (Complaint ¶ 23).

This case, however, states that a Plaintiff need only be aware of his injury and its probable cause. It then puts this proposition as, "Am I injured? Who injured me?"

Defendant Murphy continued to dispute the facts of the Plaintiff's Complaint, however, treating the alleged facts of the Complaint as true as required for this Motion, in 2017, at the time of the alleged last act of abuse, Plaintiff was aware of "who injured" him. Plaintiff knew who was massaging him. There is nothing in his Complaint to suggest that he was unaware of the identity of Defendant Murphy, nor of NCSU. It appears, instead, that Plaintiff is arguing that he did not know he was injured. In contrast to the medical diagnosis necessary in *Nasim*, it is difficult to imagine a situation in which a plaintiff would be sexually abused and not know it. For example, Plaintiff knew that Defendant Murphy had massaged him, knew where he had massaged him, knew whether he had consented to a sports massage or not, and knew whether his genitalia had been contacted.

Plaintiff was aware of whether he was injured or not. Plaintiff states in his Complaint that, "Each of Murphy's 75 to 100 contacts with Locke's genitals was nonconsensual and an offensive contact to Locke," (Complaint ¶ 135) and, "Each of Murphy's 75 to 100 contacts with Locke's genitals caused Locke emotional distress and other cumulative harms." (Complaint ¶ 136). Plaintiff wishes for this Court to conclude that he did not consent to the massage "contacts" by Murphy at the time of the events. Plaintiff also wishes the Court to conclude that he suffered emotional distress caused by these contacts. At the same moment, Plaintiff wishes this Court to conclude that he was unaware of the contacts. Even in the light most favorable to the Plaintiff the Plaintiff knew who was contacting him, the nature of the contacts, whether he was being injured by those contacts, and for what entity Defendant Murphy was employed.

Plaintiff states more than once in his Complaint that he did not feel that he could question Murphy. He makes clear in this Complaint that is because he is alleging that Murphy was in a position of authority at NCSU. (Complaint ¶¶ 54, 58, 69, 74) Locke further alleges that he was uncomfortable with Murphy's presence in the room during an exam but did not feel that he could question it or object. (Complaint ¶ 62). These allegations make clear that Plaintiff was aware who Murphy was, what his position was, and for who he worked.

There are additional allegations in the Complaint that make it clear, even in the light most favorable to the Plaintiff, that he would have been aware at the time of the alleged events what the nature of any injury was and whether it has caused him damages. In paragraph 69 if the Complaint he stated:

> d. Locke believed his genitals were often visible to other student- athletes, trainers, and coaches in the athletic training room when Murphy gave him massage treatments;
>
> e. Murphy made skin-to-skin contact by touching, rubbing, holding, moving, cupping, and/or "flicking" Locke's penis and testicles with his bare hands or fingers, without asking for or receiving Locke's consent, and without any legitimate medical reason;
>
> f. Murphy's massage treatments caused Locke to experience such extraordinary pain that he often had to bite down on a towel, and the massage treatments often left Locke with bruises; (Complaint ¶ 69).

Additionally, in Paragraph 72 of the Complaint it is alleged that, 'Murphy "flicked" Locke's penis with his bare fingers while laughing and saying, for example, "Hey, can you get these out of the way?"' Plaintiff must have been aware of whether he felt his genitals were exposed to a room, whether his penis was flicked, as opposed to his leg being massaged, and whether he was in so much pain he had to bite down on a towel. This Court, while applying the correct "in the light most favorable" standard to the Plaintiff, need not ignore these allegations of the Complaint which contain events of which the Plaintiff must have been aware between August of 2015 and May of 2017.

Plaintiff also alleged, in Paragraph 64 of his Complaint:

> f. Murphy's regular and persistent sexual grooming, harassment and sexual assaults of many male student-athletes came to be commonly known among the athletes as "getting a Rob Murphy Special." (Complaint ¶ 64).

This allegation of the Plaintiff's Complaint, while Defendant Murphy would continue to deny it, must be treated as true for the purposes of this Motion. If treated as true, paragraph 64 of the

Complaint stands for the proposition, as alleged by Plaintiff, that the male student athletes, of which the Plaintiff is one, were aware at the time of the events that, "sexual grooming," "harassment," and "sexual assaults," were taking place and were being perpetrated by Defendant Murphy. The Plaintiff then has no grounds to assert now that he was unaware.

Should the Court conclude that the Discovery Rule applies in any way because the Plaintiff was unaware that he had been injured in May of 2017, the Plaintiff's claims are still untimely. Plaintiff alleges in his Complaint that he transferred to another school in August of 2017. (Complaint ¶ 92). He then alleges in the next paragraph that he did not understand until the new athletic trainers worked on him how unacceptable Murphy's behavior was. (Id. ¶ 93). These allegations clarify that Locke, even if applying a Discovery Rule standard, was aware of his injury and its probable cause in August of 2017. As further reinforcement of this conclusion, Plaintiff alleged in the next paragraph in sequence:

> "Locke struggled with the growing realization that he had been systematically groomed and abused by Murphy for two-and-one-half years. Locke felt shame, humiliation, guilt, self-blame, self-doubt, anger, confusion, sadness and felt largely dehumanized by Murphy's conduct. Murphy's abuse and the stress and severe anxiety Locke suffered, caused Locke to experience negative impacts in his relationships, on his physical health, his mental well-being, his ability to see medical professionals without concern, and his ability to trust others." (Id. ¶ 93).

The Plaintiff, therefore, alleged that as of 2017, he had realized, whether growing or not, the nature of his alleged injury. Locke alleged he was feeling his injuries and that it was the fault of Defendant Murphy. Even treating the Plaintiff's allegations as true, the absolute latest the Plaintiff became aware of his injury and its probable cause was August of 2017, more than three years prior to the filing of this Complaint. Further, Plaintiff was aware in August 2017 of the identify of Defendant's Murphy's employer and with the same diligence as used to file this Complaint in 2022, could have filed it before

July or August of 2020 with the correct parties. Locke's Federal claims should be dismissed as untimely under the three-year statute of limitations, whether applied from July 2017 or August 2017.

B.  **STATE LAW CAUSE OF ACTION.**

North Carolina applies a three-year statute of limitations to Locke's state law claim for battery. *See N.C. Gen. Stat. § 1-52(19)* (three-year statute of limitations for battery). The Discovery Rule under North Carolina law that could toll a statute of limitations for a claim until the injury becomes apparent in contained within *N.C. Gen. Stat. § 1-52(16)* (personal injury or physical damage to claimant's property), not *N.C. Gen. Stat. § 1-52(19)* (battery). Thus there is no applicable tolling under North Carolina law to render Plaintiff's filing of claims of battery that are alleged to occur after the age of 18 timely. Any allegations in Plaintiff's Complaint of incidents of battery after August of 2015 are violative of the Statute of Limitations and should be dismissed as the would have taken place prior to May of 2017.

If Plaintiff alleges that the North Carolina Safechild Act allows him to file his action, this is not correct. In 2019, the North Carolina General Assembly enacted the Safechild Act. *N.C. Sess. Laws 2019-245*. Among other provisions, the Safechild Act created a "revival window" for certain previously time-barred civil actions. *See N.C. Sess. Laws 2019-245*. That revival window was January 2020 to December 2021, prior to the filing of this action. Since the Plaintiff did not file his claims within that window, this revival window is not applicable in this action.

In addition to the revival window, the Safechild Act provides that a plaintiff has until he attains 28 years of age to "file a civil action against a defendant for claims related to sexual abuse suffered while the plaintiff was under 18 years of age," *N.C. Gen. Stat. § 1-17(d)*. This Act, however, does not allow the Plaintiff to timely file the claims herein for two reasons. First, the SAFE Child Act did not become law until November 7, 2019, and section 1-17(d), on which Plaintiff relies, did not become effective until December 1, 2019. The Plaintiff's claims herein, if occurring prior to his eighteenth birthday and thus being within the scope of the Act, would have had to be filed in 2018. This means

11

that his claims were already barred by the applicable statute of limitations prior to the Act coming into force. As previously discussed, there was a revival window provided, however the Plaintiff did not file within that window. Second, the Safechild Act requires by the language of the statute that the Plaintiff allege "sexual abuse" suffered while a minor. In this matter, Plaintiff has not alleged that he suffered sexual abuse as a minor. As previously discussed, the only conduct Plaintiff alleges occurred before he reached the age of majority was the allegation of Defendant Murphy observing him shower at the university's athletic facilities on the day following his surgery. (Complaint, ¶¶ 45-54.)

Plaintiff alleges that Defendant Murphy and Plaintiff's parents had helped him after his surgery. (Complaint, ¶¶ 41, 42, 48, 49). When there, Defendant Murphy wrapped his bandages in the presence of Plaintiff's parents and told Plaintiff's parents that he would take care of him. (Complaint, ¶¶ 49-51). Plaintiff does not allege that Defendant Murphy had other physical contact with him, other than assisting him in removing his clothes before entering the shower. (Complaint, ¶ 52). Plaintiff then alleges that Defendant Murphy observed him shower from a distance of about five feet after the Plaintiff had trouble getting to the shower. (Complaint, ¶¶ 52-54).

Plaintiff makes clear, beginning in Paragraph 55 of the Complaint that any massages of Locke, which Locke alleges resulted in inappropriate touching, did not begin until August of 2015. (Id. ¶¶ 55, 134).

The act alleged by Plaintiff before he turned 18 does not constitute child sexual abuse. While "child sexual abuse" is not defined in the SAFE Child Act, the ordinary meaning of this phrase would not include the conduct described above. *See* N.C. Gen. Stat. Ann. § 7B-101(1)(d (sets out sexual acts for definition of "abused juvenile"); *see also State v. Couser*, 163 N.C. App. 727, 732, 594 S.E.2d 420, 424 (2004)("Sexual abuse is a broad term that could easily be construed by the jury to include both an assault on the victim in an attempt to rape her as well as the completed offense. *See Black's Law Dictionary,* 10 (7th ed.1999) (defining 'sexual abuse' as '[a]n illegal sex act, esp. one performed against a minor by an adult)'"). The SAFE Child Act

12

does not apply to the conduct attributed to Defendant Murphy before Plaintiff reached majority and therefore does not apply to any of Plaintiff's claims.

In addition, should the Court conclude that the conduct alleged by the Plaintiff prior to his having reached the age of 18 constitutes "child sexual abuse" such that the SAFE Child Act would allow for the filing of the alleged behavior, this behavior does not constitute a battery under North Carolina tort law. No contact was made while Defendant Murphy allegedly watched Plaintiff in the shower. There is no continuing course of conduct between the alleged act of watching the Plaintiff shower and battery. The claims are quite separate.

Nowhere in his Complaint does the Plaintiff allege that Defendant Murphy committed a battery against him prior to August of 2015. Indeed, in the Count III, Civil Battery portion of Plaintiff's Complaint, he indicated that it was, "between August 2015 and May 2017" that Murphy allegedly made contact with Locke's genitals. . (Id. ¶ 134). This means that any offensive contact alleged to constitute a battery took place after the Plaintiff reached the age of 18. Plaintiff would have had until May of 2020 then to file his cause of action for battery, and this claim is therefore untimely and should be dismissed.

## **CONCLUSION**

This Court lacks subject matter jurisdiction over Locke's official capacity claims against Murphy. Further, Locke's claims against Defendant Murphy fail to state viable or actionable claims and/or are otherwise time-barred. For these reasons, Locke's claims against Defendant Murphy should be dismissed.

This the 29th day of August, 2025.

                                      KURTZ & BLUM PLLC

                                      /s/ Jared Hammett
                                      Jared Hammett
                                      N.C. Bar No. 38209
                                      434 Fayetteville Street
                                      Suite 710
                                      Raleigh, NC 27601
                                      Tel: (919) 832-7700
                                      j.hammett@kurtzandblum.com

                                      Attorney for Defendant Robert M. Murphy Jr.

CERTIFICATE OF WORD COUNT

The undersigned hereby certifies that this brief complies with the word limit requirements of Local Civil Rule 7.2(f)(3)(A) of the United States District Court for the Eastern District of North Carolina. In making this certification, the undersigned certifies that the above brief contains 4579 words, as reported by the word count feature of word processing software.

This the 29th day of August, 2025.

                                         /s/ Jared Hammett
                                          Jared Hammett